IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | |
|---|---|
| ANTHONY GOODEN, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Case No. AW-08-2521 |
| ) | |
| WELLS FARGO HOME MORTGAGE, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Before this Court is Defendant's Motion for Summary Judgment (Doc. No. 24) and Defendant's Motion in Limine (Doc. No. 26). Plaintiffs, Anthony Gooden and Georgia A. Bass, bring this action alleging breach of contract and fraudulent misrepresentation, and seeking a declaratory judgment against Wells Fargo Home Mortgage. The Court has reviewed the entire record as well as the pleadings with respect to these motions and finds that no hearing is deemed necessary. *See* Local Rule 105.6 (D. Md. 2008). For the reasons discussed below, the Court will **GRANT** Defendant's Motion for Summary Judgment and **DENY AS MOOT** Defendant's Motion in Limine.

## FACTUAL BACKGROUND

According to the Complaint, Plaintiffs and Defendant entered into an agreement for the purchase of Plaintiffs' home residence on September 24, 2001. As outlined in the Deed of Trust for this property, Plaintiffs are to submit monthly payments to Defendant to equal the amount of their mortgage, taxes, and hazard insurance. The Deed of Trust further provides that Defendant is to apply these payments first to the "mortgage insurance premium paid by the Lender to the Secretary . . ."; second to "any taxes, special assessments, leasehold payments or ground rents, and fire, flood, and other hazard insurance premiums, as required"; third "to interest due under

the Note"; fourth "to amortization of the principal of the Note"; and fifth "to late charges due under the Note." (Pl. Ex. 1.)

Plaintiffs held an insurance policy with Traveler's Aetna from September 2001 to July 2006. In June 2006, Plaintiff Gooden alleges that he received a phone call from Homesite Insurance Company ("Homesite"), offering Plaintiffs the same or similar coverage that Traveler's Aetna provided but for a cheaper price. Plaintiffs accepted Homesite's offer for insurance. Plaintiffs then allegedly sent written notification to Defendant stating that they switched their insurance provider to Homesite and Defendant should now remit the insurance payments to Homesite Insurance instead of Traveler's Aetna.

In October 2006, Homesite informed Plaintiff Anthony Gooden that they had not received any payments on Plaintiffs' behalf and warned Plaintiffs that their account was in default and they were at risk of losing their insurance coverage. Plaintiff Gooden then asserts that he called Defendant's customer service to discuss why payments had not been made to Homesite and spoke with a customer service employee whom he could only recall as Samantha. Plaintiff Gooden alleges that during this conversation, Samantha called a Homesite representative, whose name Plaintiff could not recall, in a three-way call and stated that Defendant would overnight mail the back payments to Homesite and then begin to make monthly payments to Homesite.

In February 2007, a wind storm damaged Plaintiffs' property. The monetary damages were approximately $6,000. When Plaintiffs called Homesite to file a claim, Homesite stated that they canceled Plaintiffs' policy due to non-payment from August 2006 to November 2006. Since Plaintiffs were not insured with Homesite, Plaintiffs had to use forceplace insurance through Defendant, which appears to be insurance that Defendant holds on the property in the

event that the homeowner does not have insurance, which only covers damages to the structure of the home. Defendant rendered a check to Plaintiffs for $820.56.[1] However, Plaintiffs also allege that they suffered damage to their pool, backyard, and Jacuzzi, which were not covered by the forceplace insurance.

After this incident, Plaintiffs decided to separate their payments by sending their monthly mortgage and tax payments to Defendant and paying their insurance payments directly to their insurance company.[2] As a result, Defendant alleged that Plaintiffs had not submitted full mortgage payments from November 2007 to June 2008. Defendant cashed all of Plaintiffs' checks from this same period, except for the May and June payments, arguing that at that point Plaintiffs had defaulted on their mortgage and informed Plaintiffs that their home was in foreclosure. Defendant represents that it has not foreclosed on the property, although Plaintiffs contend that the decision not to proceed with foreclosure resulted from initiation of the instant case and is in "pending" status.

Plaintiffs filed their complaint in Circuit Court for Prince George's County, Maryland on July 22, 2008, and Defendant removed this case to federal court on diversity grounds pursuant to 28 U.S.C. § 1332 (2006). Count I of Plaintiffs' Complaint asserts a breach of contract claim alleging that Defendant breached by not submitting the insurance payments to the Plaintiffs' newly selected insurance company. Count II alleges a misrepresentation claim due to Defendant's customer service employee's alleged statement that Defendant would make payments to the new insurance company. Plaintiffs are seeking compensatory damages in the amount of $150,000.00 and punitive damages of $750,000.00 for those claims. Finally, Count

---

[1] This payment appears to have only covered damages to the structure of the home.
[2] Plaintiffs went back to Traveler's Aetna in June 2007.

III of Plaintiffs' Complaint seeks a declaratory judgment regarding the potential foreclosure action against the property.

## STANDARD OF REVIEW

Summary judgment is only appropriate if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). The Court must draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence. *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520 (1991) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). To defeat a motion for summary judgment, the nonmoving party must provide evidence that shows a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). While the evidence of the nonmoving party is to be believed and all justifiable inferences drawn in his or her favor, a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences. *See Deans v. CSX Transp. Inc.*, 152 F.3d 326, 330-31 (4th Cir. 1998). Additionally, hearsay statements or conclusory statements with no evidentiary basis cannot support or defeat a motion for summary judgment. *See Greensboro Prof'l Fire Fighters Ass'n, Local 3157 v. City of Greensboro*, 64 F.3d 962, 967 (4th Cir. 1995).

## ANALYSIS

**I.  Breach of Contract**

To prevail in an action for breach of contract under Maryland law, the plaintiff must prove that the defendant owed the plaintiff a contractual obligation, the plaintiff performed his obligations, and that the defendant breached his obligation. *Taylor v. NationsBank, N.A.*, 776 A.2d 645, 651 (Md. 2001); *Collins/Snoops Assocs., Inc., v. CJF, LLC*, 988 A.2d 49, 57 (Md. Ct.

Spec. App. 2010). A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. A complete failure of proof concerning an essential element necessarily renders all other facts immaterial. *Janey v. N. Hess Sons, Inc.*, 268 F. Supp. 2d 616, 620 (D. Md. 2003).

Defendant contends that Plaintiffs bear the burden of demonstrating the existence of a contract provision that Defendant allegedly breached. Defendant argues that Plaintiffs' Complaint neither attaches nor identifies a contract or contract provision that supports their claim, and failed to identify or produce any contract documents during discovery. Moreover, Defendant also states that Plaintiff Gooden, in his deposition, declared that he could not identify the contract relied upon by him to support his contract claim. Plaintiffs argue that their lack of producing the existence of the contract language that supports their claim is irrelevant because Defendant was placed on notice about the contract that supports their claim. They also state that the Defendant was fully on notice about Plaintiffs' legal position, which they argue was confirmed during Plaintiff Gooden's telephone conversation with Defendant's employee, Samantha, where Samantha allegedly assured that Defendant would send Plaintiffs' hazard insurance payments to Homesite.

It appears that Plaintiffs have based their contract claim on the language in the Deed of Trust, which provides that Plaintiffs are to pay mortgage, taxes, and insurance payments to Defendant and that Defendant is to make those respective payments on Plaintiffs' behalf. As Defendant has argued, Plaintiffs did not make clear that the Deed of Trust and loan documents formed the basis of its contract claim until Plaintiffs filed their opposition to the summary judgment motion. Defendant being placed on notice of a contractual provision does not substitute for the Plaintiffs' burden to prove the existence of a contract outlining the parties'

contractual obligations as alleged in the complaint.  Without producing this contractual provision, Plaintiffs cannot factually support the first element of their claim.  Plaintiffs have not provided sufficient evidence for the Court to find that a contract exists that obligates Defendant to remit payments to Plaintiffs' "choice homeowner insurance company."  Additionally, other than Plaintiff Gooden's self-serving testimony, Plaintiffs have offered no evidence to confirm or support the conversation with Defendant's customer service employee in which Defendant allegedly agreed to pay Homesite instead of Plaintiffs' original insurance provider.

Moreover, even if the Court were to find that the Deed of Trust was an enforceable contract requiring Defendant to make payments to any insurance company that Plaintiffs selected, including any subsequent changes in insurance providers, there are still several unanswered questions as to Plaintiffs' payment of the insurance premium with their mortgage payments and to Defendant's breach.  The record does not provide reasonably sufficient evidence that Plaintiffs continued to make their insurance payments to the Defendant after canceling their policy with Traveler's Aetna.  For instance, Plaintiffs' Exhibit 2 provides that Plaintiffs' monthly principal and interest payments were $1127.85 and that tax and insurance payments resulted in an additional $291.64, for a total monthly payment of $1419.49.  However, Plaintiff's Exhibit 15, which appears to be Plaintiffs' bank statements from the account that their mortgage payments were made, reflects that Plaintiffs made monthly mortgage payments of $1127.85 from July 2007 until April 2008 to Defendant.  Thus, because Plaintiffs have failed to produce evidence proving that Defendant owed Plaintiffs a specific contractual obligation to pay Plaintiffs' newly selected insurance company, as well as whether Plaintiffs provided sufficient payment to Defendant to cover the cost of insurance premiums, summary judgment is **GRANTED** to Defendant.

## II.     Misrepresentation

In order to establish a cause of action for intentional misrepresentation under Maryland law, the plaintiff must allege and prove that (1) a false representation was made by the defendant; (2) its falsity was either known to the defendant or made with reckless indifference to its truth; (3) the misrepresentation was made for the purpose or intent to defraud the plaintiff; (4) the plaintiff reasonably acted in reliance upon the misrepresentation with full belief in its truth, and he would not have done the thing from which damage resulted had it not been made; and (5) the plaintiff so acting suffered damage directly resulting from the misrepresentation. *Learning Works, Inc. v. The Learning Annex, Inc.*, 830 F.2d 541, 546 (4th Cir. 1987). An action for "fraud can only be predicated on misrepresentation of past or existing facts; breach of future promises lies in the realm of contract." *Call Carl, Inc. v. BP Oil Corp.*, 554 F.2d 623, 631 (4th Cir. 1977). However, "the existing intention of a party at the time of contracting is a matter of fact, and the rule has been adopted [under Maryland law] that fraud may be predicated on promises made with a present intention not to perform them." *Levin v. Singer*, 175 A.2d 423, 432 (Md. 1961).

Defendant reminds the Court that in alleging fraudulent misrepresentation, Plaintiffs have the burden of demonstrating each element, and a complete failure of proof renders all other facts immaterial. Defendant argues that although Plaintiffs allege that it deliberately made a false representation of fact with the intent of defrauding them, Plaintiffs failed to produce any evidence that confirms this intent. Defendant also asserts that Plaintiff Gooden, in his deposition, declares that he had no reason to believe that the Defendant was deliberately trying to trick him when Defendant allegedly represented that it would forward payment to Plaintiffs' new insurance company. Plaintiffs counter that Defendant led them to believe that payments to Homesite were to be made, but in fact they were not. Plaintiffs also argue that Defendant's

fraudulent intent was shown by the Defendant's failure to follow through on sending the payments.

The law in Maryland is clear that an intentional misrepresentation claim requires some evidence that Defendant made false statements with the intent to defraud the Plaintiffs, and the Plaintiffs have the burden of showing this evidence.  The Court believes that the Plaintiffs have provided insufficient evidence of Defendant's intent to defraud them, and that Plaintiffs' contention that Defendant's failure to pay the new insurance company as allegedly promised fails, by itself, to show the requisite intent to defraud.  Moreover, Maryland law provides that misrepresentations claims cannot be predicated on a future promise, which would bar such a claim in this case where Plaintiffs allege that their claim is based, at least in part, on Defendant's promise to make future payments.  Moreover, as discussed above, Plaintiffs do not produce any evidence showing Defendant had a present intention not to remit payments to Homesite during the alleged three-way telephone conversation.  Accordingly, summary judgment is **GRANTED** to Defendant as to the misrepresentation claim.

### III.     Declaratory Judgment

Under the Declaratory Judgment Act, 22 U.S.C. § 2201(a) (2006), the Court may declare the rights and legal relations of the parties where there is an actual case or controversy within the Court's jurisdiction.  As articulated by the Supreme Court, in order to satisfy the case-or-controversy requirement of Article III of the United States Constitution, courts must determine "whether the facts alleged, under all the circumstances, show there is a substantial controversy, between the parties having adverse legal interest, of sufficient immediacy and reality to warrant relief."  *Medimmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 133-34 (2007) (citations omitted).

Here, Plaintiffs seek a declaratory judgment that they are still the holder of the Deed of Title to their property, that they have superior rights to the property as to Defendant, that any

foreclosure action is void ab initio, and that Plaintiffs are entitled to damages because of Defendant's initiation of improper foreclosure proceedings. Defendant contends that it has not foreclosed on the property, and in any event, when Plaintiffs made separate payments to their insurance company they failed to tender full payment of their mortgage to Defendant and thus were in default. Plaintiffs counter that, although Defendant ceased pursuit of its foreclosure action because the instant case was initiated, the foreclosure action is still in a "pending" status. Moreover, they contend that their mortgage is in default because Defendant refused to cash Plaintiffs' payments for May and June 2008. The Court finds that there is no case-or-controversy within the meaning of the Declaratory Judgment Act with respect to the foreclosure action, or any related claims, because Defendant has not foreclosed on the property and appears to have foregone the foreclosure action against the Plaintiffs. Accordingly, summary judgment is **GRANTED** with respect to Plaintiffs' declaratory judgment claim.

## CONCLUSION

For the foregoing reasons, this Court **GRANTS** Defendant's Motion for Summary Judgment (Doc. No. 24) and **DENIES AS MOOT** Defendant's Motion in Limine (Doc. No. 26).


March 17, 2010                                                            /s/
    Date                                              Alexander Williams, Jr.
                                                      United States District Judge